■ MARY JEAN MEZZINA HANNIGAN, Respondent-Appellant, v JOHN HANNIGAN, Appellant-Respondent. [960 NYS2d 492]—

In a matrimonial action in which the parties were divorced by judgment dated November 18, 1992, the defendant appeals, as limited by his brief, from so much of an order of the Supreme Court, Nassau County (Brown, J.), entered February 17, 2011, as, upon a decision of the same court dated September 24, 2010, made after a hearing, granted those branches of the plaintiff's motion which were, in effect, to direct him to pay arrears for college expenses for the 2004/05, 2005/06, and 2006/07 school years, and granted those branches of the plaintiff's separate motion which were, in effect, to direct him to pay child support arrears for the years 2003, 2006, and 2008, and the plaintiff cross-appeals, as limited by her brief, from so much of the same order as denied that branch of her motion which was to direct the defendant to pay his pro rata share of college expenses for

the parties' daughter for the 2008/09 school year, and, in effect, denied those branches of her second motion which were, in effect, to direct the defendant to pay child support arrears for the years 2004, 2005, and 2007.

Ordered that the order is modified, on the law and the facts, by deleting the provision thereof granting those branches of the plaintiff's second motion which were, in effect, to direct the defendant to pay child support arrears for the years 2003 and 2006, and substituting therefor a provision denying those branches of the plaintiff's second motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for recalculation of the defendant's arrears in accordance herewith.

The parties are the parents of twins, John and Jenny, born in 1986. Following commencement of a divorce action, the parties executed a stipulation of settlement (hereinafter the Stipulation), which was subsequently incorporated, but not merged, into a judgment of divorce dated November 18, 1992.

The Stipulation provided that the father's monthly child support obligation shall be adjusted as of January 1 of each calendar year and shall be either 25% of the father's gross income or the sum of $5,000 per month, adjusted by the Consumer Price Index for the Greater New York area, "whichever is greater."

The Stipulation further provided that the parties agreed to pay for the undergraduate and postgraduate education of each of the unemancipated children of the marriage "in proportion to their respective incomes at the time such expenses [are] incurred." The Stipulation contained a "Modification and Waiver" clause providing: "[N]either this Stipulation, nor any provision hereof, shall be amended or modified, or deemed amended or modified, except by a Stipulation in writing duly subscribed and acknowledged with the same formality as this Stipulation. Any waiver by either party of any provision of this Stipulation or any right or option hereunder shall not be deemed a continuing waiver, and shall not prevent or estop such party from thereafter enforcing such provision, right or option, and the failure of either party to insist in any one or more instances upon the strict performance of any of the terms or provisions of this Stipulation by the other party shall not be construed as a waiver or relinquishment for the future of any such term or provision, but the same shall continue in full force and effect."

In July 2008, the mother moved (hereinafter the July motion), inter alia, to direct the father to pay "additional child support" arrears for the years 2004, 2005, and 2007, in effect,

to direct the father to pay arrears for college expenses for the 2004/05, 2005/06, and 2006/07 school years, and to direct the father to pay his pro rata share of Jenny's college expenses for the 2008/09 school year. In her supporting affidavit, the mother contended that the Stipulation obligated the defendant to pay "basic child support in the sum of $5,000 monthly based upon his income of $240,000" and that the defendant was obligated to pay as "additional child support," 25% of his income over $240,000. Using the 25% formula, the mother requested that the father be directed to pay $7,368 in additional child support for the year 2004, $4,943 in additional child support for the year 2005, and an amount to be determined by the court in additional child support for the year 2007. The mother stated that the father "appears to owe no additional child support for 2006 as his income, as reflected on his income tax return, did not exceed $240,000." In his opposition papers, the father admitted that based on the 25% formula, he owed the mother additional child support for the years 2004, 2005, and 2007 in the sums of $7,368, $4,943 and $768, respectively, and the father tendered a check to the mother dated September 12, 2008, in the sum of $13,079. In October 2008, the mother made a second motion (hereinafter the October motion), inter alia, in effect, to direct the father to pay child support arrears for the years 2003 through 2008. In the October motion, the mother calculated the father's child support obligation as $5,000 per month, adjusted by the Consumer Price Index for the Greater New York area, instead of 25% of the father's income.

After a hearing on both motions, the Supreme Court, inter alia, granted those branches of the July motion which were, in effect, to direct the father to pay arrears for college expenses for the 2004/05, 2005/06, and 2006/07 school years, denied that branch of the July motion which was to direct the father to pay his pro rata share of Jenny's college expenses for the 2008/09 school year, granted those branches of the October motion which were to direct the father to pay child support arrears for the years 2003, 2006, and 2008, and, in effect, denied those branches of the October motion which were, in effect, to direct the father to pay child support arrears for the years 2004, 2005, and 2007.

The Supreme Court properly denied those branches of the October motion which were to direct the father to pay child support arrears for the years 2004, 2005, and 2007, and, moreover, should have also denied those branches of the October motion which were to direct the father to pay child support arrears for the years 2003 and 2006. "Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned"

(*Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d 96, 104 [2006]; *see Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 NY2d 175, 184 [1982]). "Such abandonment 'may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage' " (*Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d at 104, quoting *General Motors Acceptance Corp. v Clifton-Fine Cent. School Dist.*, 85 NY2d 232, 236 [1995]; *see Hadden v Consolidated Edison Co. of N.Y.*, 45 NY2d 466, 469 [1978]). "Generally, the existence of an intent to forgo such a right is a question of fact" (*Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d at 104; *see Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y.*, 61 NY2d 442, 446 [1984]). Here, is clear from the explicit language of the July motion that the mother was seeking additional child support arrears for the years 2004, 2005, and 2007 using the 25% formula, and that she did not seek additional child support arrears for the years 2003 or 2006 because the father had not earned income over $240,000 for those years. Accordingly, when the father paid the mother $13,079 by check, the entire amount originally sought by the mother as accrued additional child support arrears for the years 2003 through 2007, and the mother accepted and cashed the check, as she testified that she did, the mother waived her right to demand additional child support arrears based upon the Consumer Price Index formula (*see Matter of Horowitz v Horowitz*, 40 AD3d 640, 641 [2007]; *Frankel v Siravo*, 278 AD2d 66, 67 [2000]). Moreover, the mother's own testimony that she "never intended to ask for [an increase based on the Consumer Price Index formula]" evidenced a manifestation of intent to relinquish that contractual right (*see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d at 104). Contrary to the mother's suggestion, "[a] waiver, to the extent that it has been executed, cannot be expunged or recalled" (*Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 NY2d at 184).

However, the Supreme Court properly determined that the mother was entitled to child support arrears based on the Consumer Price Index formula for 2008, since she had not requested, or received, additional child support for 2008 at the time of the October motion. Based on the clear and unambiguous language of the Stipulation's "Modification and Waiver" provision, the mother's past waiver of her right to adjustments based on the Consumer Price Index formula could not be construed as a waiver of the same for the future, and there is no other basis in the record to conclude that the mother waived her right to adjustments based on the Consumer Price Index formula with regard to 2008.

The Supreme Court also properly granted those branches of the July motion which were, in effect, to direct the father to pay arrears for college expenses for the 2004/05, 2005/06, and 2006/07 school years. The Stipulation required the parties to pay educational expenses on a pro rata basis, "in proportion to their respective incomes at the time such expenses [are] incurred." The father contends that the parties orally modified the Stipulation to split the college expenses 50/50 instead of on a pro rata basis. "Generally, a written agreement which prohibits oral modification can only be changed by an 'executory agreement . . . in writing' " (*Calica v Reisman, Peirez & Reisman*, 296 AD2d 367, 368 [2002], quoting General Obligations Law § 15-301 [1]; *see Fairchild Warehouse Assoc. v United Bank of Kuwait*, 285 AD2d 444, 445 [2001]). "However, an oral modification is enforceable if the party seeking enforcement can demonstrate partial performance of the oral modification, which performance must be unequivocally referable to the modification" (*Calica v Reisman, Peirez & Reisman*, 296 AD2d at 369; *see Rose v Spa Realty Assoc.*, 42 NY2d 338, 343-344 [1977]; *Healy v Williams*, 30 AD3d 466, 467 [2006]; *Kayser v Kayser*, 18 AD3d 441, 442 [2005]). "[I]n order to be unequivocally referable, conduct must be inconsistent with any other explanation" (*Richardson & Lucas, Inc. v New York Athletic Club of City of N.Y.*, 304 AD2d 462, 463 [2003]; *see Barretti v Detore*, 95 AD3d 803, 806 [2012]). Here, while the father testified that the parties orally agreed to split the college expenses 50/50, instead of on a pro rata basis, the mother testified that she only agreed to pay 50% of the college expenses up front, with the understanding that the parties would "settle up" later. There is no basis in the record to set aside the hearing court's determination to credit the mother's testimony on this matter (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]; *Kun v Fulop*, 71 AD3d 832, 833 [2010]). Crediting the mother's testimony, the mother's actions in paying 50% of the college expenses were not unequivocally referable to the modification that the father alleges was made (*see Rose v Spa Realty Assoc.*, 42 NY2d at 343-344; *Calica v Reisman, Peirez & Reisman*, 296 AD2d at 369; *cf. Healy v Williams*, 30 AD3d 466, 467-468 [2006]).

The Supreme Court properly denied that branch of the July motion which was to direct the father to pay his pro rata share of Jenny's college expenses for the 2008/09 school year. The Stipulation only required the parties to pay college expenses of "unemancipated" children, and provided that the children would be deemed to have become emancipated upon attaining the age of 21, except that emancipation would be delayed "if,

and so long as, the child continuously pursues a college and post graduate education on a full-time basis." Since it is undisputed that Jenny did not attend college during the Fall semester of 2007, she became emancipated as of her 21st birthday in 2007.

The parties' remaining contentions either are without merit or are not properly before this Court. Rivera, J.P., Lott, Sgroi and Cohen, JJ., concur.